# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN URIAS,<br><br>    Defendant-Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>    Plaintiff-Respondent. | CASE NOS. 11-cv-1491-BEN<br>                       10-cr-927-BEN<br><br>**ORDER**<br><br>**(1) DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**<br><br>**(2) DENYING CERTIFICATE OF APPEALABILITY** |

    Before this Court is a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 filed by Petitioner Ivan Urias. (Docket[1] No. 30). Petitioner alleges that he received ineffective assistance of counsel (IAC) because his attorney failed to research whether Petitioner's prior conviction disqualified him for "safety valve" relief, and incorrectly advised him that he would qualify for it. (Mot. at 6). Petitioner claims that he would not have signed the plea agreement if he had known that he would not qualify. (Memorandum of Law in Support of Motion (Memo) at 8). Petitioner claims that this violated his Sixth Amendment rights, and rendered his plea invalid. (*Id.* at 1).

    For the reasons stated below, Petitioner's Motion is **DENIED**.

///

---

[1] All docket numbers refer to the docket in the criminal case, 10-cr-927-BEN.

## I. Background

On February 18, 2010, a Complaint was filed alleging that Petitioner violated 21 U.S.C. §§ 952 and 960 by importing approximately 11.75 kilograms of cocaine into the United States. (Docket No. 1). Petitioner retained John Francis Kelly shortly thereafter, and claims he informed Kelly that he had been arrested for a "DUI"[2] on May 1, 2006. (Memo at 3). Petitioner claims that Kelly told him not to worry, as the conviction was already three years old. (*Id.*)

On March 3, 2010, the United States of America (Government) offered Petitioner a plea agreement. (Mot., Exh. A). Petitioner states that Kelly gave him a copy and went over the agreement carefully. (Memo at 4). The "Sentencing Guideline Calculations" section included an entry for "Safety Valve (if applicable)." (Plea Ag. at 7). The agreement stated that if the defendant truthfully disclosed all information and evidence concerning the offense and relevant conduct, and if defendant "otherwise qualifies" for the safety valve in § 5C1.2, that the government would recommend a two-level reduction and relief from any statutory mandatory minimum. (*Id.* at 8). The agreement also stated "Defendant understands that if he does not qualify for § 5C1.2, defendant may be subject to a statutory mandatory minimum sentence." (*Id.*) The agreement contained a waiver of Petitioner's right to appeal and collaterally attack the conviction or the sentence. (*Id.* at 10). Petitioner claims that Kelly told him that the agreement "basically only provided for a 37 month term of imprisonment because he qualified for all of the agreement's departures and because the Government had agreed to recommend the bottom of the recommended sentencing guideline range." (Memo at 4). Petitioner states that Kelly told him that he should accept the agreement, because it was the best he was going to get. (*Id.*) Petitioner signed the agreement on March 30, 2010. (Plea Ag.)

Petitioner states that another inmate told him that his prior conviction might

---

[2]Petitioner states that his prior conviction was actually for "Driving While Having a Measurable Blood Alcohol." (Mot. at 3).

disqualify him for the safety valve. (*Id.* at 4-5). Petitioner claims he contacted Kelly and reminded him of the conviction. (*Id.* at 5). He claims that Kelly said not to worry, and that Kelly would contact the attorney who handled his 2006 case. (*Id.*) Petitioner entered a plea of guilty to the sole count of the Information before Magistrate Judge Anthony J. Battaglia on April 1, 2010. (Docket Nos. 16, 17). After entering his plea, Petitioner states that he "kept asking" Kelly about the 2006 conviction. (Memo at 5). Petitioner claims that Kelly said that the prior attorney had retired, that Petitioner should not worry, and that Kelly would handle everything. (*Id.* at 5-6).

Petitioner claims he spoke to another attorney, Phillip DeMassa, because Kelly had not addressed his concerns. (*Id.* at 6). Petitioner states that DeMassa initially told him he had a good agreement and should not change lawyers. (*Id.*) Petitioner reports that DeMassa returned "one to two hours later" and told him that he was in trouble. (*Id.*) He told Petitioner that he did not qualify for the safety valve, and therefore would not receive all the benefits of the plea agreement, because he had committed the federal offense while on probation. (*Id.*) DeMassa informed Petitioner that he could help him. (*Id.* at 7). Petitioner received confirmation of his status in late May or early June, when Petitioner saw the pre-sentence report (PSR), and Kelly told him that he would not qualify for the safety valve. (*Id.*) Kelly told Petitioner that he would explain the situation to the court and something would work out. (*Id.*)

Petitioner substituted DeMassa as his counsel on June 12, 2010, and DeMassa represented him during his sentencing. (*Id.*) Although Petitioner does not allege that DeMassa was ineffective, he states that DeMassa apparently thought Petitioner would be willing to cooperate with the government. (*Id.* at n.4). Petitioner states that when this did not occur, DeMassa "refused to do anything" for Petitioner. (*Id.*)

On September 7, 2010, Petitioner was sentenced by this Court to 120 months of imprisonment, the mandatory minimum for his offense. (Docket Nos. 26, 27). Petitioner filed his Motion to Vacate, Set Aside, or Correct Sentence on July 6, 2011.

## II. Legal Standard

A district court may "vacate, set aside or correct" the sentence of a federal prisoner that was imposed in violation of the Constitution or a law of the United States. 28 U.S.C. § 2255(a). A district court must hold an evidentiary hearing before denying a § 2255 motion, unless it is conclusively shown that the prisoner is entitled to no relief. 28 U.S.C. § 2255(b). However, if it is clear the petitioner has failed to state a claim, or has "no more than conclusory allegations, unsupported by facts and refuted by the record," a district court may deny a § 2255 motion without an evidentiary hearing. *United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986).

## III. Discussion

### A. Waiver of Right to Collateral Attack

The Government claims that Petitioner cannot assert his claim in a § 2255 motion because he waived his right to collaterally attack his sentence in his plea agreement. (Opp. at 4; Plea Ag. at 10). The Ninth Circuit has upheld the validity of waivers of the right to collateral attack. *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993). The right to collateral attack in a criminal case is purely statutory. *Id.*

A waiver of the right to collateral attack will be enforced where it was "knowing and voluntary," and encompasses the right to appeal on the grounds raised. *Id.*; *Patterson-Romo v. United States*, No. 10-cr-3319, No. 12-cv-1343, 2012 WL 2060872, at *1 (S.D. Cal. June 7, 2012). A waiver of appeal is unenforceable where the agreement as a whole is involuntary or otherwise unenforceable. *See United States v. Portillo-Cano*, 192 F.3d 1246, 1250 (9th Cir. 1999). Where a defendant has counsel during the plea process and enters a plea upon the advice of counsel, the voluntariness of the plea depends upon whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).

Review of Ninth Circuit precedent indicates that a waiver of collateral attack rights will not preclude a petitioner from raising a § 2255 claim of ineffective assistance of counsel in connection with the plea agreement containing the waiver. The

Ninth Circuit held that "a plea agreement that waives the right to file a federal habeas petition pursuant to 28 U.S.C. § 2254 is unenforceable with respect to an IAC claim that challenges the voluntariness of the waiver." *Washington v. Lampert*, 422 F.3d 864, 871 (9th Cir. 2005). The Ninth Circuit reiterated that "claims of ineffective assistance of counsel . . . challenge the voluntary and intelligent nature of the plea agreement." *Id.* at 869 (quoting *United States v. Ruiz*, 241 F.3d 1157, 1164 (9th Cir. 2001)). In reaching its conclusion, the Ninth Circuit in *Lampert* relied on its own precedent expressing doubts that a waiver of § 2255 rights would be enforceable with respect to an IAC claim based on "counsel's erroneously unprofessional inducement of the defendant to plead guilty or accept a particular plea bargain." *Id.* at 870 (discussing *United States v. Pruitt*, 32 F.3d 431 (9th Cir. 1994); *United States v. Jeronimo*, 398 F.3d 1149 (9th Cir. 2005)). The *Lampert* Court noted that other circuits had held that waivers cannot bar such IAC claims in the context of § 2255 motions. *Id.* at 870-71. The Ninth Circuit has recently assumed in dicta that a petitioner could raise an IAC claim connected to her plea in a § 2255 collateral attack. *United States v. Brizan*, 709 F.3d 864, 867 (9th Cir. 2013).

Petitioner argues that IAC caused him to accept an agreement that he would not otherwise have accepted, and to enter a plea he would not otherwise have entered. (Reply at 1). Petitioner claims that both his plea and his plea agreement are invalid. (*Id.*) Accordingly, this Court finds that Petitioner's waiver does not prevent him from raising the instant challenge.

**B. Ineffective Assistance of Counsel Claim**

<u>1. Legal Standard</u>

An IAC claim must demonstrate that (1) defense counsel's performance was deficient; and (2) this deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 690-92 (1994). The *Strickland* test "applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill*, 474 U.S. at 58. Where a court concludes that a petitioner was not prejudiced by any deficient performance, it

may proceed directly to the second prong. *Strickland*, 466 U.S. at 697. As this Court finds that Petitioner was not prejudiced, it will not resolve the first prong.

### 2. Prejudice

In the context of a plea bargain, the prejudice requirement is met by showing that "there is a reasonable probability that, but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 57-59; *see also Womack v. McDaniel*, 497 F.3d 998, 1002 (9th Cir. 2007). The record demonstrates that Petitioner cannot make this showing.

Petitioner contends that he would not have pleaded guilty if he had known that he would not qualify for the safety valve. (Memo at 8, 12). He states that if he had been convicted at trial, he faced a 135-168 month sentence. (*Id.* at 12). He points out that this is "only" 25 months more than the sentence he received. (*Id.*) That sentencing range indicates that Petitioner would have received 15-48 months of additional prison time had he gone to trial and been convicted, unless this Court deviated from the guidelines. Petitioner speculates that, had he been convicted at trial, he "probably" would have received a "Mitigating Role reduction" at sentencing, reducing his guideline range to 87-108 months. (*Id.* at 12-13). Petitioner concedes that this Court would still have been required to impose at least the mandatory minimum sentence of 120 months, but that this means that the Court would "probably" not have imposed a sentence above the mandatory minimum. (*Id.*) Petitioner states that this Court "expressed concern" about sentencing him to 120 months, raising the "reasonable probability" that it would have imposed the bottom of any guideline range or the mandatory minimum sentence. (*Id.*) Petitioner concludes that "he would not have fared much worse if he proceeded to trial." (*Id.*)

Petitioner's arguments demonstrate that he cannot show that there was a "reasonable probability" that he would not have pleaded guilty. Petitioner could not have received a lower sentence if convicted, and risked the imposition of a higher sentence. The guidelines range suggests that he might have faced an additional one to

four years in custody, a substantial addition to the ten-year sentence he received. Although this Court expressed concern about the severity of the sentence, Petitioner was unaware of this prior to the sentencing hearing.

Petitioner would only have had a better outcome if he had persuaded a jury to find him not guilty. Petitioner nowhere contends that he would have been able to do so. Even as he seeks to invalidate his plea, Petitioner nowhere asserts that the facts of the case have been misstated. The record shows that Petitioner was caught attempting to enter the United States with 11.75 kilograms of cocaine in his vehicle.

Review of the sentencing hearing transcript reveals that Petitioner was represented by new counsel. (Tr. of Sentencing, Docket No. 29). This Court spoke to counsel at side bar regarding the fact that it was a mandatory minimum, 120-month sentence. (*Id.* at 2:16-22). DeMassa conceded it was a mandatory minimum sentence, that he had nothing to add, and that "there is no reason for the court not to impose that." (*Id.* at 2:20-22). The Court addressed Petitioner, and told him that: "If there is anything you wish to say, now is the time to say it." (*Id.* at 3:7-9). Petitioner stated that his family did not get the funds to get him the "best help," and he "thought he would get an extension to see if there was anything else that could be done with my case." (*Id.* at 3:14-19). Petitioner then stated that he regretted what he had done. (*Id.* at 3:19-20). The Court noted that it had no discretion in imposing the mandatory minimum, but that it felt that a lesser sentence might be appropriate, given that Petitioner was only 28 years old and had no other criminal history. (*Id.* at 4:14-5:2). This Court also invited a Rule 35 motion. (*Id.* at 5:3-6).

Although Petitioner might have wished for a delay or the "best" counsel, he did not indicate that there were any problems he wanted to raise, or which he felt needed time and attention from new counsel. He did not mention unhappiness with counsel or his plea agreement, raise ineffective assistance of counsel, or make any reference to a desire to withdraw his plea.

Petitioner had ample opportunity to attempt to withdraw his plea. Under Federal

Rule of Criminal Procedure 11(d)(2)(B), a defendant seeking to withdraw a guilty plea after the court has accepted it, but before a sentence has been imposed, must demonstrate a "fair and just" reason for withdrawal. The Ninth Circuit has stated that the "fair and just" standard is "generous and must be applied liberally." *United States v. Mayweather*, 634 F.3d 498, 504 (9th Cir. 2010). The defendant is not required to prove that his plea is invalid. *Id.* When a defendant seeks to withdraw his plea based on erroneous or inadequate legal advice, the defendant's burden is "simply to show that proper advice 'could have at least plausibly motivated a reasonable person in [the defendant's] position not to have pled guilty had he known about the [grounds for withdrawal] prior to pleading.'" *Id.* (quoting *United States v. Garcia*, 401 F.3d 1008, 1012 (9th Cir. 2005) (alterations in *Mayweather*)).

      As Petitioner states the facts, he had months to consider his options and consult with new counsel before he was sentenced. Petitioner knew that Kelly had misadvised him and that he would not qualify for the safety valve since his meeting with DeMassa. This meeting was held before he saw the PSR during his meeting with Kelly in late May or early June 2010. From June 12, 2010, Petitioner was represented by new counsel who was aware of the problem and did not raise it. Petitioner claims that DeMassa essentially abandoned him after he refused to cooperate with the government, and that Petitioner could not have filed a motion to withdraw. However, Petitioner did not raise any IAC claims as to DeMassa, and did not mention any concerns to this Court.[3] Petitioner never alleges that he asked DeMassa about withdrawing the plea, or that he told DeMassa to attempt to do so. Despite time and assistance, Petitioner made no efforts to withdraw his plea and proceed to trial.

      In his Reply, Petitioner points to the fact that neither Kelly nor DeMassa sought to use state procedures to mitigate the impact of his past conviction. (Reply at 6).

---

[3] Although this Court will not unnecessarily consider an issue not raised in the Motion, it would be difficult for Petitioner to prevail on an ineffective assistance of counsel claim as to the failure to file a motion to withdraw, particularly given the fact that he was facing a mandatory minimum. *See United States v. Sanchez-Ross*, Nos. CR-04-139, CV-06-253, 2006 WL 3457211, at *4-5 (E.D. Wash. Nov. 30, 2006).

Petitioner points to the opinion in *United States v. Yepez*, 652 F.3d 1182, 1199 (9th Cir. 2011), in which a three-judge panel held that where a defendant had persuaded a state court to have his probation terminated nunc pro tunc to the day before his offense, he should be sentenced as if he had not been on probation the day of the offense, allowing the defendant to qualify for the safety valve. However, an en banc panel of the Ninth Circuit reversed the decision and held that the defendant was to be sentenced based on the historical fact that he had been on probation during the offense. *United States v. Yepez*, 704 F.3d 1087, 1091 (9th Cir. 2012) (en banc). The Court notes that the first *Yepez* decision was issued months after Petitioner was sentenced. Additionally, Petitioner did not raise this claim in his initial Petition or assert any IAC claims against DeMassa. Petitioner acknowledged that he could have alleged that Kelly and DeMassa rendered IAC when they failed to follow the *Yepez* procedure, but "only raised a valid claim of IAC against Attorney Kelly for bad legal advice." (Reply at 6, n.2). Petitioner cannot rely on the failure of his attorneys to attempt to terminate his probation.

Petitioner also cites to *Canas v. United States*, Nos. 07-cv-637, 02-cr-5366, 2010 WL 121308 (E.D. Cal. Jan. 7, 2010). In *Canas*, the district court found that counsel was ineffective for failing to investigate conflicting reports regarding whether the defendant had a prior conviction. *Id.* at *4. Canas' prior conviction rendered him ineligible for the safety valve, and subjected him to a mandatory minimum sentence. *Id.* at *1, 5. The district court concluded that Canas had been prejudiced by counsel's deficient performance. *Id.* at *4-5. Although Canas faced a 120-month mandatory minimum sentence because of his prior conviction, the *Canas* court found it significant that the guideline range for his offenses was no more than 123 months, "a relatively minor three-month differential." *Id.* at *5. By contrast, Petitioner concedes that he could have faced 15-48 months of imprisonment had he proceeded to trial. Such time can hardly be characterized as a minor differential. Additionally, the defendant in *Canas* filed a "motion to strike prior, or in the alternative to withdraw plea" which included a declaration from his counsel. *Id.* at *2. Petitioner made no such efforts.

Given that Petitioner was facing a mandatory minimum, would have risked a longer sentence if he went to trial, nowhere suggests he might have been found not guilty, knew for months that he did not qualify for the safety valve, was represented by new counsel for months, and failed to take opportunities to raise the issue before this Court, this Court concludes that Petitioner was not prejudiced by his first counsel's allegedly deficient performance. He cannot show that there is a "reasonable probability" that he would have insisted upon proceeding to trial.

### C. Evidentiary Hearing

Unless the motion and the records of a case conclusively show that the prisoner is entitled to no relief, a court is required to grant a hearing. 28 U.S.C. § 2255(b). However, where the record demonstrates that a petitioner has failed to state a claim, a district court may deny a § 2255 motion without an evidentiary hearing. *Quan*, 789 F.2d at 715. Given the foregoing discussion, this Court finds that Petitioner cannot succeed upon his IAC claim. Based upon Petitioner's own allegations and the record before this Court, an evidentiary hearing would not allow Petitioner show prejudice.

### IV. Conclusion

For the reasons stated above, the Motion to Vacate, Set Aside, or Correct Sentence is **DENIED**.

A court may issue a certificate of appealability where the petitioner has made a "substantial showing of the denial of a constitutional right," and reasonable jurists could debate whether the petition should have been resolved differently, or that the issues presented deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003). This Court finds that Petitioner has not made the necessary showing. A certificate of appealability is therefore **DENIED**.

**IT IS SO ORDERED**.

DATED: March 19, 2014

_____
Hon. Roger T. Benitez
United States District Judge